**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE DIET DRUGS (Phentermine/Fenfluramine/ Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | § § § § § § § | MDL DOCKET NO. 1203 |
| **THIS DOCUMENT RELATES TO:** | | |
| ALLEN, RHONDA v. WYETH, et al. | § § | E.D.-Pa. 2:04-CV-23140-HB |
| BRYAN, MARY J. et al. v. WYETH, et al. | § § | E.D.-Pa. 2:04-CV-23142-HB |
| PHILLIPS, KELLY L., et al.v. WYETH, et al. | § § | E.D.-Pa. 2:04-CV-23139-HB |
| RAMSEY, KATHERINE v. WYETH, et al. | § § | E.D.-Pa. 2:04-CV-21591 |

**WYETH'S MEMORANDUM**
**IN CONSOLIDATED RESPONSE**
**TO PLAINTIFFS' MOTIONS TO REMAND**

Wyeth submits this Memorandum as its consolidated response in opposition to the motions to remand pending in the above captioned cases.

**I.**

**INTRODUCTION**

A notice of pending motion to remand has been filed with this Court in each of the four captioned cases. In *Ramsey v. Wyeth*, Plaintiff filed a motion to remand and memorandum in support of her motion to remand with this Court. All the Plaintiffs in these cases are represented by the same counsel, Fleming & Associates. All of these cases were filed in Texas state court by Texas citizens and were removed by Wyeth to Texas federal court.

Plaintiffs' form state-court petitions assert essentially verbatim claims against Wyeth and the Plaintiffs' prescribing physicians. Wyeth filed a notice of removal in each

of these cases establishing the fraudulent joinder of the non-diverse physician defendants. Wyeth also filed motions to stay all proceedings pending transfer to MDL-1203.  In two of the four cases, *Ramsey v. Wyeth* and *Bryan v Wyeth*, Wyeth's motions to stay were granted.  Each of these cases were subsequently transferred to this Court from varying United States District Courts of Texas.

The motions and briefs in these four cases (and even the exhibits thereto) are substantially identical.  Thus, Wyeth submits this consolidated response in an effort to simplify the Court's resolution of these motions to remand.  A consolidated response is appropriate because the non-diverse physician defendants are fraudulently joined for the same reason: the Plaintiffs' claims against the physicians are barred by the statute of limitations.

## II.

## SUMMARY OF ARGUMENT

The only dispute in these lawsuits is between Plaintiffs and Wyeth.  The only reason Plaintiffs can still sue Wyeth — over five years after the latest date they could have sustained diet-drug related injuries — is that Wyeth waived the statute of limitations as part of the global settlement agreement to which Plaintiffs are parties.  Plaintiffs have nevertheless sued their non-diverse prescribers in a transparent attempt to defeat this Court's jurisdiction.

Plaintiffs have no reasonable basis for claims against their physicians because any claims against them are barred by the statute of limitations *as a matter of law*.  In Texas, the statute of limitations on a tort claim against a physician expires two years from the date of the last treatment.  TEX. REV. CIV. STAT. art. 4590i (Article 4590i) §10.01.  Any

alleged diet drug injuries to Plaintiffs' heart valves occurred before or shortly after September 1997, the latest date Plaintiffs could have taken the drugs. This Court has held that plaintiffs are collaterally estopped from arguing otherwise. The extensive local and national media attention concerning Wyeth's withdrawal of Pondimin and Redux from the market put Plaintiffs on notice that they could have such an injury in September 1997. Even if Plaintiffs were not on notice of their alleged claims in 1997, they should have been by no later than March 2000, when there was another wave of publicity surrounding the Nationwide Class Action Settlement Agreement. Because Plaintiffs did not file their Petitions until May or June 2003, all of their claims are time-barred. For these reasons, this Court should reject Plaintiffs' efforts to defeat federal jurisdiction and deny Plaintiffs' motions to remand.[1]

### III.

### FACTUAL BACKGROUND

Plaintiffs, all allegedly citizens of Texas, commenced these actions against Wyeth in May and June 2003 in varying Texas state district courts. Plaintiffs also named non-diverse defendants, their prescribing physicians. Plaintiffs assert negligence, design defect, marketing defect, and misrepresentation claims against Wyeth. Plaintiffs attempt to assert a claim for fraudulent concealment (which is not a cause of action), as well as a negligence claim, against their prescribing physicians (the "Physician Defendants").

---

[1] Plaintiff Katherine Ramsey also makes an objection to the timeliness of Wyeth's Notice of Removal, which she apparently has incorporated into her memorandum by mistake. Plaintiff Ramsey asserts that Wyeth originally removed her case to Texas federal court on June 19, 2003, had the case remanded to Texas state court on August 25, 2003, and then removed again on May 20, 2004. *See* Plaintiff Katherine Ramsey's Memorandum in Support of Motion to Remand at 4. This is false. Wyeth removed the *Ramsey* case on June 20, 2003 and it was stayed pending transfer to this Court. *See* Docket Reports in *Ramsey v. Wyeth*, attached as Exhibit H. In any event, Wyeth's removal was timely, because its notice of removal was filed less than thirty days after Wyeth was served (Wyeth was served in *Ramsey* on June 4, 2003).

Wyeth timely removed these actions to their respective United States District Courts based on diversity of citizenship. Both cases were subsequently transferred to this Court.

**IV.**

**APPENDIX AND EXHIBITS TO THIS MEMORANDUM**

Wyeth submits the following as Exhibits to this Memorandum:

| | |
|---|---|
| Exhibit A | Notice of Removal in *Ramsey v. Wyeth*, No. 03-CV-2190, Southern District of Texas, Houston Division, including the state court record, which is a representative sample of the notices filed by Wyeth in these cases; |
| Exhibit B | Documentary evidence that was attached to all of Wyeth's notices of removal in these cases, including Houston publicity evidence; |
| Exhibit C | Summary of the Houston publicity exhibits submitted with notices of removal; |
| Exhibit D | Docket reports in *Ramsey v. Wyeth*, No. 03-CV-2190 in the Southern District of Texas, Houston Division; and 2:04-CV-21591-HB, in this Court; |
| Exhibit E | Collected Texas Opinions on Fraudulent Joinder of Physicians; |
| Exhibit F | Motion to Remand and Memorandum in support of Motion to Remand in *Ramsey v. Wyeth*, MDL Cause No. 2:04-CV-21591-HB. |

**V.**

**ARGUMENT AND AUTHORITIES**

**A.    The Fraudulent Joinder Standard.**

Plaintiffs claim that Wyeth must show that there is "no possibility" of recovery in order to prevail against the Physician Defendants and to establish that Plaintiffs have not fraudulently joined the Physician Defendants. *See, e.g.*, Plaintiff Katherine Ramsey's

Memorandum in Support of Motion to Remand (*Ramsey* Mem.), at 6.  This is not the law in the Third Circuit, which now applies to these cases — nor is it the law in the Fifth Circuit.  In the Third Circuit, joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."  *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3rd Cir. 1990) (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3rd Cir. 1985)); *Anderson v. American Home Prods.*, 220 F. Supp. 2d 414, 419 (E.D. Pa. 2002) (PTO 2567) (quotation and emphasis omitted).  Colorable, for this purpose, means not "wholly insubstantial and frivolous."  *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3rd Cir. 1992).  In making these determinations, this Court is authorized to look beyond the pleadings.  *See, e.g.*, *Boyer*, 913 F.2d at 112.  As this Court recently explained in denying remand in another diet drug case:

> [I]f the plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence.  We are not to decide automatically in favor of remand simply because some facts may be said to be in dispute.

*Anderson*, 220 F. Supp. 2d at 420 (PTO 2567) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 98 (1921)).

Applying this test, a defendant is fraudulently joined where the claim against the defendant is barred by the applicable statute of limitations.  *See, e.g.*, *Rainey v. Wyeth* (E.D. Pa. June 12, 2003) (PTO 2886), at 10 (holding that physician was fraudulently joined where plaintiff's claims were barred by Alabama two-year statute of limitations); *Ferrell v. Wyeth* (E.D. Pa. Sept. 5, 2003) (PTO 2996), at 19 (same).

**B.    Plaintiffs' Claims Against the Physician Defendants Are Time-Barred.**

1.    *The two-year statute of limitations began to run in September 1997, at the latest, and expired in September 1999, at the latest.*

Under Texas law, a cause of action for personal injury against a health care provider must be brought within two years after the date of the alleged wrongful act or breach of duty:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed *within two years* from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or hospitalization for which the claim is made is completed.

TEX. REV. CIV. STAT. ANN. art. 4590i § 10.01 (emphasis added).  Where a plaintiff claims that a drug prescribed by his physician caused harm, limitations on his malpractice claim against the physician begins to run on the date of the last drug treatment, and ends two years later.  *Rowntree v. Hunsucker*, 833 S.W.2d 103, 105 (Tex. 1992).  The diet drugs were withdrawn from the market in September 1997.  Plaintiffs could not have been prescribed the drugs after that date.  Accordingly, limitations began to run in September 1997, at the latest, and expired in September 1999, at the latest, almost four years before Plaintiffs filed suit in May and June 2003.

The so-called "discovery rule" does not apply to the Article 4590i limitations period.  *Diaz v. Westphal*, 941 S.W.2d 96, 99 (Tex. 1997).   Instead, this statute imposes an absolute two-year limitations bar, subject only to the "Open Courts" exception under the Texas Constitution, discussed below.

2.    *Plaintiffs cannot rely upon the Open Courts provision.*

The "Open Courts" exception "is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible

condition." *Diaz*, 941 S.W.2d at 100 (citations omitted). That exception applies "*only if it would be impossible or exceedingly difficult to discover the injury*" within the limitations period. *O'Reilly v. Wiseman*, 107 S.W.3d 699, 707 (Tex. App.—Austin 2003, pet. denied) (emphasis added); *see also Rubalcaba v. Kaestner*, 981 S.W.2d 369 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The Open Courts provision is therefore not simply the discovery rule under a different name — *i.e.*, it is not enough for Plaintiffs to show that it was "reasonable" for them not to discover their alleged injuries within limitations (a showing Plaintiffs could not make anyway). As explained below, Plaintiffs in this case easily could have discovered their alleged injuries within the two-year limitations period, and the Open Courts exception therefore can have no applicability here.

> a.    Plaintiffs are collaterally estopped from asserting that their alleged injuries are latent.

Plaintiffs insist that their alleged heart-valve injuries were latent and therefore could not have been discovered until years after their ingestion of the drugs. *See, e.g.*, *Ramsey* Mem. at 18–21. In doing so, Plaintiffs ignore the repeated findings by this Court that the heart-valve injuries allegedly attributable to Wyeth's drugs are not latent but occurred at the time or shortly after use of the drugs.

The Court's recent opinion in *Alexander* is conclusive of this issue. There, the Court confronted another set of Class Members similarly urging that their alleged valve injuries were "latent." The Court squarely held that Judge Bechtle's findings to the contrary, made in the course of approving the Nationwide Class Action Settlement, collaterally estopped Plaintiffs from raising this argument:

> Here, the plaintiffs are class members and were thus parties to the Settlement Agreement. The issue of latency was actually litigated in the fairness hearing and is the same issue that the plaintiffs are now raising to defeat the bar of the statute of limitations. Judge Bechtle's determination of no latency, that is that class members' injuries occurred within a short time after ingesting fen-phen, was an essential finding, for it directly affected the adequacy of class representation. *See* PTO No. 1415 at 104–08. Finally, PTO No. 1415, in which Judge Bechtle approved the Settlement Agreement, is a final and valid judgment, upheld on appeal. Thus, plaintiffs are collaterally estopped from relitigating the issue of latency through the affidavits of [their experts].

*Alexander* (PTO 3230), at 14–15. *See also French* (PTO 3281), at 12–13 (Feb. 19, 2004) ("plaintiffs are collaterally estopped from re-litigating the issue of latency"); *Ferrell* (PTO 2996), at 7–8 (Sept. 5, 2003) ("there is no latency period between ingestion of Pondimin and any injury, plaintiffs' injury at the latest commenced, and thus the limitations period began to run, shortly after the diet drugs were pulled from the market in September, 1997"); *Rainey* (PTO 2886), at 7 (June 12, 2003) ("Since there is no latency period between ingestion of Pondimin and any injury, plaintiff's injury at the latest commenced, and thus the limitations period began to run, shortly after Pondimin went off the market in late 1997.") (footnote omitted); PTO 1415, 2000 WL 1222042, at *46 (Aug. 28, 2000) ("These [valvular] lesions are not latent. If they are going to occur, they are going to occur during drug use (or shortly thereafter) and be demonstrable on echocardiogram."). Plaintiffs likewise are collaterally estopped here from claiming that their alleged injuries were latent.

        b.      Overwhelming publicity put Plaintiffs on notice to see a physician.

Plaintiffs have also ignored this Court's repeated holding that the publicity surrounding the withdrawal of Redux as well as the publicity associated with the Class

Notice was more than sufficient to trigger a duty to inquire, even under a less stringent "discovery rule" standard:

- "[T]here was massive publicity, both locally and nationally, from September, 1997 through March, 2000 concerning Wyeth's diet drugs and their connection to valvular heart disease.  In light of this massive publicity, plaintiffs, if they had acted with reasonable diligence, should have had knowledge of their alleged injuries by the end of March, 2000." *Amiker* (PTO 3301), at 6 (Apr. 2, 2004).

- "In light of the massive publicity concerning the health risks associated with the use of diet drugs [and] the comprehensive notice program associated with the settlement, . . . we find that plaintiffs, through the exercise of reasonable diligence, should have discovered their alleged injuries at the very latest by the end of March, 200." *French* (PTO 3281), at 13.

- "In light of the massive publicity concerning the health risks associated with the use of Pondimin, we find that plaintiff was on inquiry notice and should have discovered [her doctor's] alleged fraud at the very latest by early Spring, 2000." *Ferrell* (PTO 2996), at 17.

- "[T]here was massive publicity from 1997 through the Spring of 2000 concerning Wyeth's diet drugs and their connection to valvular heart disease.  Certainly plaintiff should have known about her injury no later than the Spring of 2000." *Wilson* (PTO 3000), at 2.

- "There has been an unprecedented amount of notice associated with the fen-phen class action settlement *such that these class members cannot legitimately assert that they were unaware of the dangers that the diet drugs posed*."  MDL-1203 PTO 2677, at 13 (denying Class Members' cross-motion to extend the Screening Program) (emphasis added).

Indeed, the evidence of the unprecedented publicity about diet drugs and heart problems attached to Wyeth's Notices of Removal amply demonstrates that no diet drug user can reasonably assert she was unaware of the link between diet drugs and asymptomatic heart problems.[2]  *See* Exhibit C to this Memorandum (summarizing local and national publicity exhibits submitted with Notice of Removal).  This publicity gave Plaintiffs every piece of information they needed to discover their alleged injuries well

within limitations: (1) that diet drugs had been linked to heart valve problems; (2) that such problems could be asymptomatic; and (3) that such problems could be detected through a simple, non-invasive test.

Time after time, articles, newscasts, and other public sources reported and "warned" that diet drugs were "linked" to injury, or "associated" with injury, or caused "risks" of injury. *See* Exhibit C. This was sufficient to alert any reasonable person to the reported link between the two. Moreover, articles, television programs, and publications stressed that the diet-drug associated valve injury could be asymptomatic, *id.* at 4, and explained the warnings and advice to former drug users to seek a medical evaluation, even if they had no symptoms.

For example, in the Houston area, where both Plaintiffs resided:

- The CBS Houston affiliate KHOU-TV News at Five opened its show with the story, "Millions of dieters will have to find a new way to fight those extra pounds. Two popular diet pills are being pulled off the market. . . The Food and Drug Administration is urging millions of dieters to stop taking fenfluramine and Redux. They have been linked to potentially serious heart problems."[3]

- The NBC news affiliate opened its show with the story: "Two of the country's most popular diet drugs are pulled from the shelves. Millions lost weight with them; now they're asked to stop taking them. New evidence shows they could seriously damage the heart – a diet drug danger that could be deadly."[4]

---

[2] *See* the Houston publicity exhibits submitted with Wyeth's Notice of Removal, attached to this Memorandum as Exhibit B.

[3] 11 News at Five (KHOU-TV (CBS) television broadcast, September 15, 1997), attached as Exhibit 17 to Wyeth's Notice of Removal, Exhibit B.

[4] *News 2 Houston at Five* (KPRC-TV (NBC) television broadcast, September 15, 1997), transcript attached as Exhibit 19 to Wyeth's Notice of Removal, Exhibit B.

- The Houston Chronicle covered the withdrawal on the front page. "FDA withdraws two diet drugs" was the headline of the story. The sub-heading was "Redux and portion of fen-phen linked to damage of heart valves."[5]

- Houston radio shows provided extensive coverage of the withdrawal. For example, KPRC-AM's AM Drive News reported, "In our national news this morning, obesity experts say there's going to be a lot of desperate people now that popular diet drugs have been taken off the market. Both Redux and one of the drugs making up what's popularly known as fen-phen have been pulled because of new evidence linking them to potentially serious heart problems."[6]

- The Houston Chronicle ran frequent ads from plaintiffs' lawyers, including one with the following (inaccurate, but warning) message: "Recently the FDA recalled diet drugs Pondimin (fenfluramine) & Redux (dexfenfluramine.) It has been determined that these drugs may cause serious injuries and even death. A Mayo Clinic study indicates that about 30% of the patients who were evaluated had abnormal echocardiograms, even though they had no symptoms."[7]

- An advertisement by Leebron & Robinson, P.C. had a headline of "ATTENTION FEN-PHEN & REDUX PATIENTS" followed by this message: "Medical experts have reported LIFE THREATENING problems resulting from the use of these diet pills. Fenfluramine (Pondimin) and Redux have been withdrawn from the market by the F.D.A. If you have taken these diet pills, you should see your doctor immediately."[8]

Even if the mass of public information available before September 1999 did not put Plaintiffs on notice of their claims, they should have been on notice no later than March 2000, by which time a massive media campaign had been conducted in conjunction with the Nationwide Class Action Settlement. This campaign included:

---

[5] Brigid Schulte, *FDA Withdraws Two Diet Drugs*, Houston Chron., Sept. 16, 1997 at 1A, attached as Exhibit 20 to Wyeth's Notice of Removal, Exhibit B.

[6] *AM Drive News* (KPRC-AM radio broadcast, Sept. 16, 1997), transcript attached as Exhibit 21 to Wyeth's Notice of Removal, Exhibit B.

[7] *Fen-Phen Redux* (newspaper ad by David P. Willis), Houston Chron., Sept. 21, 1997, attached as Exhibit 23 to Wyeth's Notice of Removal, Exhibit B.

[8] *Attention Fen-Phen & Redux Patients* (newspaper ad by Leebron & Robinson, P.C.) Houston Chron., Sept. 21, 1997, attached as Exhibit 24 to Wyeth's Notice of Removal, Exhibit B.

- Television advertisements appearing 106 times on network television and 781 times on cable networks.

- Full-page advertisements in twelve national magazines.

- Summaries of the settlement published in publications targeted to healthcare providers and pharmacists.

- Banner advertisements appearing on numerous internet sites.

- Information distributed to 108,227 pharmacists and 784,128 doctors likely to have prescribed or provided these drugs, including "counter cards" to make the information available to former diet drug users.

- A website, which, by May 2, 2000 had 1,485,371 "page views."

*In re Diet Drugs*, 2000 WL 1222042, at *35–36.

The overwhelming majority of Texas federal courts, interpreting Texas law, have agreed that the publicity campaign was sufficient to put prospective Texas plaintiffs on notice. In *Cantrell*, the United States District Court for the Northern District of Texas held that the Open Courts exception to the limitations bar did not apply because the plaintiff, "in the exercise of reasonable diligence, should have known more than two years before she filed this suit that the diet drugs about which she complains in this case had been linked to heart valve problems" and that "[t]he extensive media coverage surrounding the diet drugs starting in September 1997 is more than sufficient to impute knowledge to" the plaintiff. *Cantrell v. Wyeth*, No. 3:03-CV-1659, at 9–10 (N.D. Tex. Sept. 19, 2003), attached as Exhibit F-1 to this Memorandum.

The United States District Judge for the Western District of Texas, applying Texas law, denied a motion to remand in virtually identical circumstances, recognizing that the Texas plaintiff was charged with notice of her claim by the publicity surrounding the withdrawal of Pondimin and Redux:

> The prescription drugs central to this case were removed from the market in 1997; therefore, at the latest, Plaintiff's claim began to run in 1997 and expired in 1999. Plaintiff has identified no duty under Texas law for [her prescribing physician] to seek her out after more than six years to advise her to seek treatment. *Additionally, Plaintiff was also on notice of the dangers associated with the diet drugs due to the expansive publicity regarding their removal from the market.*

*Spence v. Wyeth*, No. W-03-CA-127, at 3 (W.D. Tex. July 16, 2003) (emphasis added) (Exhibit F-2). *See also Garrett v. Wyeth*, No. W-03-CA-219 (W.D. Tex. Sept. 12, 2003) (Smith, J.) (same) (Exhibit F-3); *Coleman v. Wyeth*, No. W-03-CA-201 (W.D. Tex. Sept. 12, 2003) (Smith, J.) (same) (Exhibit F-4); *Holder v. Wyeth*, No. W-03-CA-205 (W.D. Tex. Sept. 10, 2003) (Smith, J.) (same) (Exhibit F-5).

The United States District Court for the Southern District of Texas denied the plaintiff's motion to remand in a virtually identical case, specifically finding that the extensive publicity gave the Texas plaintiff ample opportunity to discover her injury within the limitations period:

> Given the extent of the publicity surrounding fen-phen diet drugs, and given the stringent standard set by the Texas legislature and Texas courts, Ms. Bejarano had ample opportunity to reasonably discover her injury. She has not shown that it was "impossible" or "exceedingly difficult."[9]

*Bejarano v. Wyeth*, No. L-03-53, at 12 (S.D. Tex. June 27, 2003) (Exhibit F-6).

Another judge of the Western District of Texas also held:

---

[9] Courts have held that extensive publicity put potential plaintiffs on notice of their claims in non-diet drug cases as well. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 404 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999) (holding that plaintiff's claim was barred by statute of limitations because extensive media coverage of Agent Orange "should have put [plaintiff] on notice" of the need to investigate her claim); *United Klans of Am. v. McGovern*, 621 F.2d 152, 154 (5th Cir. 1980); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000); *Stutz Motor Car of Am., Inc. v. Reebok Int'l., Ltd.*, 909 F. Supp. 1353 (C.D. Cal. 1995); *Winters v. Diamond Shamrock Chem. Co.*, 941 F. Supp. 617, 619–20 (E.D. Tex. 1996); *Blanton v. Cooper Indus., Inc.*, 99 F. Supp. 2d 797, 802–03 (E.D. Ky. 2000); *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998); and *Hoskins v. United States*, Case No. CIV-A-00-1713, 2001 WL 175237, at *2 (E.D. La. Feb. 20, 2001).

> Wyeth's evidence indicates a reasonably diligent plaintiff should have learned facts about the risks to fen-phen users of heart valve problems, as well as facts about the lack of noticeable symptoms of such problems, long before December 31, 2000 (two years before McCurdy filed her lawsuit). Upon learning these facts, a reasonable plaintiff would have heeded the warnings and visited her physician.

*McCurdy v. Wyeth*, No. A-03-CA-054-SS, at 6–7 (W.D Tex. Feb. 14, 2003) (Exhibit F-7).

This Court and Texas federal courts have also rejected plaintiffs' attempts to manufacture a fact issue by isolating seemingly contradictory information from selected media excerpts — a tactic attempted by Plaintiffs here. This Court flatly rejected this very argument in *Blackledge v. Wyeth*, MDL-1203, PTO 3363 (March 16, 2004):

> Plaintiffs assert that they could not have been on notice of their potential claims against Dr. Pruett because the publicity surrounding the diet drugs and their withdrawal from the market contained contradictory information. We disagree. A review of the articles that plaintiffs submitted in support of their position demonstrates that the information provided to the public regarding diet drugs was in fact consistent in many regards.
>
> *            *            *
>
> Given the breadth of information available to plaintiffs regarding diet drugs and heart valve injury as early as 1997, we find that a reasonable person would have investigated their potential claims.

*Id.* at 6–7.

As of the date this Memorandum is filed, Texas federal courts have denied remand in over 170 diet-drug cases involving non-diverse physicians. By contrast, only a handful of courts have granted remand in such cases. *E.g., Young v. Wyeth*, No. 3:03-CV-1176-P (N.D. Tex. Sept. 8, 2003) (Exhibit F-9); *Bradford v. Wyeth*, No. 5:03-CV-217-C (N.D. Tex. Jan. 27, 2004) (Exhibit F-10); *Hodge v. Wyeth*, No. C-02-271 (S.D. Tex. July 5, 2002) (Exhibit F-11). Wyeth respectfully submits that the substantial

majority position is the better reasoned.   The minority opinions uniformly ignored the overwhelming publicity associated with the Class notice campaign in the Spring of 2000. The minority also failed to address why it was "impossible or exceedingly difficult" for plaintiffs to have learned of their alleged injuries, given the widespread publicity warning even asymptomatic users to see a doctor.

This Court's decision to grant remand in *Price* (PTO 2710) is readily distinguishable.  *Price* involved District of Columbia law and facts not present here.  In that case, the plaintiff did heed warnings to see her doctor in 1997, and she got an echocardiogram.   There was a factual dispute between the plaintiff and the physician concerning whether the doctor told her that she had nothing to worry about after that echocardiogram.  In addition, under unique District of Columbia case law, the statute of limitations was extended until treatment by the doctor had terminated, and there was a continuing course of treatment in that case that lasted long after the diet drugs were withdrawn from the market.   Regardless of whether there was ongoing treatment, however, the Texas Supreme Court has made clear that in Texas, limitations on a malpractice claim based on the prescription of a drug begins to run on the date of the last drug treatment, and ends two years later.  *Rowntree*, 833 S.W.2d at 105.  Here, that date, at the latest, was 1997.

The overwhelming amount of publicity surrounding the diet drugs and heart problems gave Plaintiffs everything they needed to know to discover their alleged injuries.  Most significantly, it told Plaintiffs they might be injured and yet not have symptoms.  It was precisely *because* diet drug users could not diagnose themselves that numerous different sources — Wyeth, the FDA, HHS, the official Court Notice of the

Settlement, the media, and hundreds of attorney advertisements — told diet drug users to get echocardiograms because they might have asymptomatic heart injuries.  Yet Plaintiffs ignored these warnings, and waited from four to five years after they last took diet drugs to have echocardiograms.  Under these circumstances, Plaintiffs' claims against the Physician Defendants are time-barred as a matter of law.

      3.     *Plaintiffs cannot invoke the Open Courts doctrine for the additional reason that they failed to file their claims against the Physician Defendants within a reasonable time after the alleged date of discovery.*

Plaintiffs' reliance upon the Open Courts Doctrine is further misplaced because they unreasonably delayed filing suit against the Physician Defendants after discovering their alleged injuries.  Even in those rare cases when it applies, the Open Courts provision does not simply tack two more years onto the limitations period.  Instead, a plaintiff must use diligence to sue within a reasonable time after learning about the alleged wrong.  *Shah v. Moss*, 67 S.W.3d 836, 847 (Tex. 2001).  The limitations period is extended only long enough to permit a reasonable time to investigate, prepare, and file the suit.  *Fiore v. HCA Health Servs. of Tex., Inc.*, 915 S.W.2d 233, 237 (Tex. App.—Fort Worth 1996, writ denied).  A delay is unreasonable as a matter of law when the plaintiff offers only invalid excuses or no excuse at all.  *See Shah*, 67 S.W.3d at 847 (holding plaintiff's seventeen-month delay unreasonable as matter of law where plaintiff offered no explanation for seventeen-month delay other than rejected claim of fraudulent concealment); *Fiore*, 915 S.W.2d at 237 (holding plaintiff's approximately one-year delay unreasonable as matter of law where plaintiff offered no explanation for delay); *LaGesse v. Primacare, Inc.*, 899 S.W.2d 43, 47 (Tex.App.—Eastland 1995, writ denied) (holding delay of slightly less than one year unreasonable as matter of law).

At least one Texas federal court has found that an unexplained delay of ten and one-half months between echocardiogram and suit warranted a finding of fraudulent joinder as a matter of law. The Honorable Keith B. Ellison of the Southern District of Texas denied remand and found a physician fraudulently joined after a plaintiff offered no explanation for her ten and one-half-month delay in filing suit after her echocardiogram:

> Even if the echocardiogram constituted Ms. Radke's first notice of her injury, Plaintiffs have offered no explanation for the lengthy delay in filing this lawsuit. There is not a single factual allegation relating to this issue in Plaintiffs' short form petition, the Master Petition, or Ms. Radke's affidavit. Plaintiffs here have had more than ample opportunity to put the relevant factual allegations before this Court, but have completely failed to do so. In these circumstances, the facts admit no other conclusion than that Plaintiffs unreasonably delayed in filing the lawsuit. Therefore, the Court finds that there is no reasonable possibility that a Texas court would apply the open courts doctrine to revive Ms. Radke's time-barred claims against Dr. Lostetter. The doctor was fraudulently joined.

*Radke v. Wyeth*, Civil Action No. L-03-140 (S.D. Tex. Dec. 15, 2003) (Exhibit F-12).

Both Plaintiffs have provided echocardiogram reports. Plaintiff Childress delayed filing suit for ten and one-half months and Plaintiff Williams delayed filing suit for twenty-five months after allegedly discovering their injuries through an echocardiogram. *See* Exhibit D (copies of Plaintiffs' echocardiogram reports). Yet, neither of the Plaintiffs have attempted to excuse or justify this delay, even though they had the opportunity to do so when they filed their petitions in Texas state court and when they filed their motions to remand in this Court. Texas law required these Plaintiffs to articulate valid, reasonable justifications for their inordinate delays in filing suit after their echocardiograms, and they have failed to do so. The fraudulent joinder standard does not require this Court to invent hypothetical or speculative excuses on their behalf. Because Plaintiffs have

offered no justification for their delays, they were unreasonable as a matter of law. *Fiore*, 915 S.W.2d at 237; *LaGesse*, 899 S.W.2d at 47. Thus, the Open Courts equitable tolling provision does not apply. Regardless of the open courts provision or the discovery rule, Plaintiff Williams had actual notice of her injury more than two years before she filed suit, and therefore, her claims are barred.

        4.     *Fraudulent concealment does not save Plaintiffs' claims.*

Plaintiffs' reliance on the doctrine of fraudulent concealment is equally unavailing. Fraudulent concealment is not a cause of action *per se*, but is an equitable doctrine that, in the proper case, estops a defendant from relying on the statute of limitations. *Bordelon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). "[P]roof of fraudulent concealment requires more than evidence that the physician failed to use ordinary care; it also requires evidence that the defendant *actually knew the Plaintiffs were in fact wronged, and concealed that fact* to deceive the Plaintiffs." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999) (emphasis added).

Plaintiffs do not allege that the Physician Defendants knew Plaintiffs had been injured. Plaintiffs merely allege that the Physician Defendants failed to alert Plaintiffs of the possible dangers of the diet drugs and failed to advise Plaintiffs to have an echocardiogram or cardiovascular examination *to determine if they had sustained injuries. See, e.g.*, Plaintiff Childress's Petition, ¶ 70, included as part of the state court record submitted with Wyeth's Notice of Removal (Exhibit A to this Memorandum). In other words, Plaintiffs accuse the Physician Defendants of failing to tell Plaintiffs they *might* have been injured. As the Court held in *Ross* (PTO 3207), such an allegation falls

short of pleading that "the defendant had actual knowledge that he . . . caused the injury." *Ross*, at 9.

This Court also rejected similar fraudulent concealment claims in *Stanger* (PTO 2876), in which it found that the plaintiffs' claims against the physician defendants were barred by Utah's four-year statute of repose. *Id.* at 9. While the plaintiffs conceded that they ingested diet drugs more than four years prior to filing suit, they contended that the doctrine of fraudulent concealment tolled the statute of repose. This Court rejected this contention, finding that the "Plaintiffs are simply averring negligence against these defendants." *Id.* at 11. This Court explained: "Plaintiffs have nowhere properly alleged that the in-state physicians or pharmacy at any time 'ha[ve] affirmatively acted to fraudulently conceal the[ir] alleged misconduct.'" *Id.* (citation omitted). While the Court's decision there was based upon Utah law, the reasoning is applicable here.

The United States District Court for the Northern District of Texas in *Cantrell* recently rejected a similar attempt to recast a (groundless) claim of medical negligence as a charge of fraudulent concealment:

> [Plaintiff], in a creative attempt to save her claim[s] from the statute of limitations, has attempted to burnish those claim[s] with the patina of fraudulent concealment. However, absent a showing that [her doctor] had actual knowledge of — and concealed — an injury, [plaintiff's] naked claims of medical negligence are plainly insufficient to demonstrate fraudulent concealment. [citation omitted] Nowhere has [plaintiff] set forth factual allegations showing that [her doctor] had a fixed purpose to conceal from [plaintiff] — or acted affirmatively to prevent [plaintiff] from discovering — that she was injured as a result of taking diet drugs. In her amended petition and her memorandum in support of the motion to remand, [plaintiff] simply makes the conclusory allegations that [her doctor] fraudulently concealed both the dangers of Pondimin and Redux and the need for [plaintiff] to undergo an echocardiogram or cardiovascular examinations. She fails, however, to provide any factual basis to support these allegations. Accordingly, the court — after piercing the pleadings to determine the question of

> fraudulent joinder — concludes that [plaintiff] has failed to carry her burden of showing that [her doctor] actually knew [plaintiff] was injured by the diet drugs in question, or that [her doctor] willfully concealed that fact in order to deceive [plaintiff].

*Cantrell*, Exhibit F-1, at 11.   Plaintiffs here likewise allege simple negligence, not fraudulent concealment, against the Physician Defendants.

Finally, even when it does apply, fraudulent concealment does not excuse a plaintiff from ignoring information that would put a reasonable person on notice of his injury.  *See Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App.—Austin 1997, writ denied).   Instead, it "merely defers the statute of limitations *until the plaintiff learns or in the exercise of reasonable diligence should have learned* of the facts that give rise to its cause of action." *Id.* (emphasis added).  Plaintiffs knew, or in the exercise of reasonable diligence should have known, of the facts giving rise to their causes of action more than two years before they filed suit in May 2003. They unquestionably knew that they had taken diet drugs.  And due to the news reports and other public notice of the link between diet drugs and asymptomatic heart valve regurgitation, discussed in the Notice of Removal, Plaintiffs knew or should have known of the need to get an echocardiogram more than two years before they filed suit.  Had Plaintiffs obtained this simple, non-invasive test, they would have learned of any diet drug related injuries at that time, since, as noted above, this type of injury is not latent and would have been detected.  *See French* (PTO 3281), at 12–13; *Ferrell* (PTO 2996), at 7–8.

> 5. *The statute of limitations was not extended by the Class Action Complaint, the Settlement Agreement, or PTO 1415.*

Citing *American Pipe*, Plaintiffs contend the filing of various class action complaints tolled the statute of limitations. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1973)). This Court succinctly rejected this contention in *Amiker*, noting that "[t]he physician defendants here were not defendants in any identified putative class actions." *Amiker* (PTO 3391), at 9. Plaintiffs have likewise failed to identify any putative class action to which the Physician Defendants were party-defendants.

Plaintiffs next contend that the statute of limitations was tolled by the Nationwide Class Action Settlement Agreement and PTO 1415. Again, physicians were not parties to the Class Action. Plaintiffs have cited no authority (nor can they) for the proposition that the Class Members and Wyeth, through a privately-negotiated settlement, purported to or indeed could have, dispensed with the physicians' personal limitations defense. *See Amiker* (PTO 3391), at 8–9 (April 2, 2004). PTO 1415 adopted and implemented the Settlement Agreement and did not purport to waive the defenses of non-parties or those in privity with them.

Plaintiffs' reliance on the Settlement Agreement and PTO 1415 is misplaced for two other reasons. First, the statute of limitations on Plaintiffs' claims against the Physician Defendants had run by 1999, *before* the Settlement Agreement was even approved. There was no unexpired limitations period to toll. Second, neither the Settlement Agreement nor PTO 1415 prevented any Plaintiff from undergoing echocardiograms in 2000 or 2001 (which, indeed, one Plaintiff here did). The injunction section of PTO 1415 referred to by Plaintiffs applies only to enjoin class members from filing suit if they have not followed the Settlement Agreement's procedures to "opt-out" of settlement benefits. It does not bar or limit plaintiffs who timely and properly exercise

one of the downstream opt-out rights (as Plaintiffs here purport to do) from suing their healthcare provider within the statute of limitations period.

WHEREFORE, Wyeth requests that the Court deny Plaintiffs' motions to remand.

Respectfully submitted,

_/s/ Leslie A. Benitez_

Peter L. Zimroth
ARNOLD & PORTER
399 Park Avenue
New York, NY 10022
(212) 715-1010

Robert D. Rosenbaum
Robyn M. Holtzman
ARNOLD & PORTER
555 Twelfth Street
Washington, DC 20004
(202) 942-5862

Michael T. Scott
Paul B. Kerrigan
REED SMITH LLP
2500 One Liberty Place
Philadelphia, PA 19103
(215) 851-8248

Leslie A. Benitez
CLARK, THOMAS & WINTERS,
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, TX 78767
(512) 472-8800

**Attorneys for Defendant Wyeth**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Wyeth's Memorandum in Consolidated Response to Plaintiffs' Motions to Remand and Index to the Appendix of Exhibits have been filed electronically on the 8th of July, 2004, and are available for viewing and downloading from the EDF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D). A true and correct copy of the foregoing document and the Appendix of Exhibits has been served on the below-listed parties in the manner indicated below on the 8th of July, 2004.

**Via Certified Mail**

Jaime Rangel
Scott A. Love
George M. Fleming
James L. Doyle, II
Rand P. Nolen
G. Sean Jez
Adam Peavy
FLEMING & ASSOCIATES
1330 Post Oak Boulevard, Suite 3030
Houston, Texas 77056

Mike O'Brien
MIKE O' BRIEN, P.C.
1330 Post Oak Blvd., Suite 2960
Houston, Texas 77056

Eric N. Roberson
LAW OFFICE OF PATRICK J. MULLIGAN, P.C.
2911 Turtle Creek Boulevard, Suite 900
Dallas, Texas 75219
**Attorneys for Plaintiffs**

**Via Regular Mail**[10]

Jay H. Henderson
T. Scott Allen, Jr.
CRUSE, SCOTT, HENDERSON & ALLEN
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
**Attorneys for D. T. Le Huong and Dr. Henry M. Shanoff**


*/s/ Leslie A. Benitez*
Leslie A. Benitez

---

[10] Given the volume of the Appendix of Exhibits, the special Discovery Master and all other counsel required to be served by Pretrial Order No. 19 will be served today with an <u>Index to the Appendix of Exhibits</u> rather than the two-volume Appendix.  If any of these counsel would like to receive a complete set of the Appendix of Exhibits, they should contact Wyeth's Liaison Counsel in MDL 1203.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE DIET DRUGS (Phentermine/Fenfluramine/ Dexfenfluramine PRODUCTS LIABILITY LITIGATION | § § § § § § § | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | | |
| ALLEN, RHONDA v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-23140-HB |
| BRYAN, MARY J., et al. v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-23142-HB |
| PHILLIPS, KELLY, et al. v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-23139-HB |
| RAMSEY, KATHERINE v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-21591-HB |

## APPENDIX OF EXHIBITS
### TO
## WYETH'S MEMORANDUM IN CONSOLIDATED RESPONSE
## TO PLAINTIFFS' MOTIONS TO REMAND

### VOLUME I OF II

Peter L. Zimroth
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
(212) 715-1000

Leslie A. Benitez
CLARK, THOMAS & WINTERS, P.C.
300 West 6th Street
15th Floor
Austin, TX 78701
(512) 472-8800

Robert D. Rosenbaum
Robyn M. Holtzman
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Michael T. Scott
Paul B. Kerrigan
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

Date: August 9, 2004

Attorneys for Defendant Wyeth

**INDEX TO EXHIBITS**

**Exhibit Tab**                    **Description**

**VOLUME I**                       **VOLUME I**

A                                  **Notice of Removal with Supporting Exhibits**
                                   • *Notice of Removal*

                                   • *State Court Record Nos. 1-7*
                                   1.    Docket Sheet
                                   2.    Plaintiff's Petition (Short Form)
                                   3.    Fleming & Associates, L.L.P. Plaintiffs' Master
                                         Petition
                                   4.    Citation
                                   5.    Motion to Transfer Venue of Defendant Wyeth
                                         and, Subject Thereto, Original Answer
                                   6.    Notice to State Court of Filing of Notice of
                                         Removal
                                   7.    Notice to Plaintiff of Filing of Notice of Removal

B                                  • *Declaration of Mary K. Walton*
                                   • *Houston Publicity Exhibits*

**VOLUME II**                      **VOLUME II**

C                                  **Summary of Publicity Exhibits Submitted with Notice of
                                   Removal**

D                                  **Echocardiographic Reports**

E                                  **Docket Report in *Ramsey v. Wyeth, et al.,* Civil Action
                                   No. 03-CV-2190, Southern District of Texas, Houston
                                   Division, removed on June 20, 2003**

F                                  **Collected Texas Opinions on Fraudulent Joinder of
                                   Physicians**

                                   • ***F-1***    *Cantrell v. Wyeth,* No. 3:03-CV-1659, at
                                         9-10 (N.D. Tex. Sept. 19, 2003)

                                   • ***F-2***    *Spence v. Wyeth,* No. W-03-CA-127, at 3
                                         (W.D. Tex. July 16, 2003)

                                   • ***F-3***    *Garrett v. Wyeth,* No. W-03-CA-219
                                         (W.D. Tex. Sept. 12, 2003) (Smith, J.)

- *F-4*      *Coleman v. Wyeth,* No. W-03-CA-201 (W.D. Tex. Sept. 12, 2003) (Smith, Jr.)

- *F-5*      *Holder v. Wyeth,* No. W-03-CA-205 (W.D. Tex. Sept. 10, 2003)

- *F-6*      *Bejarano v. Wyeth,* No. L-03-53, at 12 (S.D. Tex. June 27, 2003)

- *F-7*      *McCurdy v. Wyeth,* No. A-03-CA-054-SS, at 6-7 (W.D. Tex. Feb. 14, 2003)

- *F-8*      *Turner v. Wyeth,* No. A-03-CA-648-SS, slip op. at 6 (W.D. Tex. Nov. 6, 2003)

- *F-9*      *Young v. Wyeth,* No. 3:03-CV-1176-P (N.D. Tex. Sept. 8, 2003)

- *F-10*      *Bradford v. Wyeth,* No. 5:03-CV-217-C (N.D. Tex. Jan. 27, 2004)

- *F-11*      *Hodge v. Wyeth,* No. C-02-271 (S.D. Tex. July 5, 2002)

- *F-12*      *Radke v. Wyeth,* C.A. No. L-03-140 (S.D. Tex., Dec. 15, 2003)

G        **Defendant Jansen S. Todd, M.D.'s Original Answer to Plaintiffs' Original Petition**

H        **Plaintiff's Motion to Remand and Plaintiff's Memorandum in Support of Motion to Remand**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE DIET DRUGS (Phentermine/Fenfluramine/ Dexfenfluramine PRODUCTS LIABILITY LITIGATION | § § § | MDL DOCKET NO. 1203 |
| | § § | |
| THIS DOCUMENT RELATES TO: | § § § | |
| ALLEN, RHONDA v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-23140-HB |
| BRYAN, MARY J., et al. v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-23142-HB |
| PHILLIPS, KELLY, et al. v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-23139-HB |
| RAMSEY, KATHERINE v. WYETH, et al. | § | E.D.-Pa. 2:04-CV-21591-HB |

**APPENDIX OF EXHIBITS**
**TO**
**WYETH'S MEMORANDUM IN CONSOLIDATED RESPONSE**
**TO PLAINTIFFS' MOTION TO REMAND**

**VOLUME II OF II**

Peter L. Zimroth
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
(212) 715-1000

Robert D. Rosenbaum
Robyn M. Holtzman
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Leslie A. Benitez
CLARK, THOMAS & WINTERS, P.C.
300 West 6th Street
15th Floor
Austin, TX 78701
(512) 472-8800

Michael T. Scott
Paul B. Kerrigan
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

Date: August 9, 2004

Attorneys for Defendant Wyeth

**INDEX TO EXHIBITS**

**Exhibit** **Tab**                          **Description**

**VOLUME I**                                 **VOLUME I**

   A                          **Notice of Removal with Supporting Exhibits**
                                             • *Notice of Removal*

                                             • *State Court Record Nos. 1-7*
                                             1.    Docket Sheet
                                             2.    Plaintiff's Petition (Short Form)
                                             3.    Fleming & Associates, L.L.P. Plaintiffs' Master
                                                    Petition
                                             4.    Citation
                                             5.    Motion to Transfer Venue of Defendant Wyeth
                                                    and, Subject Thereto, Original Answer
                                             6.    Notice to State Court of Filing of Notice of
                                                    Removal
                                             7.    Notice to Plaintiff of Filing of Notice of Removal

   B                          • *Declaration of Mary K. Walton*
                                             • *Houston Publicity Exhibits*

**VOLUME II**                                **VOLUME II**

   C                          **Summary of Publicity Exhibits Submitted with Notice of Removal**

   D                          **Echocardiographic Reports**

   E                          **Docket Report in *Ramsey v. Wyeth, et al.,* Civil Action No. 03-CV-2190, Southern District of Texas, Houston Division, removed on June 20, 2003**

   F                          **Collected Texas Opinions on Fraudulent Joinder of Physicians**

                                             • *F-1*    *Cantrell v. Wyeth,* No. 3:03-CV-1659, at
                                                9-10 (N.D. Tex. Sept. 19, 2003)

                                             • *F-2*    *Spence v. Wyeth,* No. W-03-CA-127, at 3
                                                (W.D. Tex. July 16, 2003)

                                             • *F-3*    *Garrett v. Wyeth,* No. W-03-CA-219
                                                (W.D. Tex. Sept. 12, 2003) (Smith, J.)

- *F-4*      *Coleman v. Wyeth,* No. W-03-CA-201 (W.D. Tex. Sept. 12, 2003) (Smith, Jr.)

- *F-5*      *Holder v. Wyeth,* No. W-03-CA-205 (W.D. Tex. Sept. 10, 2003)

- *F-6*      *Bejarano v. Wyeth,* No. L-03-53, at 12 (S.D. Tex. June 27, 2003)

- *F-7*      *McCurdy v. Wyeth,* No. A-03-CA-054-SS, at 6-7 (W.D. Tex. Feb. 14, 2003)

- *F-8*      *Turner v. Wyeth,* No. A-03-CA-648-SS, slip op. at 6 (W.D. Tex. Nov. 6, 2003)

- *F-9*      *Young v. Wyeth,* No. 3:03-CV-1176-P (N.D. Tex. Sept. 8, 2003)

- *F-10*      *Bradford v. Wyeth,* No. 5:03-CV-217-C (N.D. Tex. Jan. 27, 2004)

- *F-11*      *Hodge v. Wyeth,* No. C-02-271 (S.D. Tex. July 5, 2002)

- *F-12*      *Radke v. Wyeth,* C.A. No. L-03-140 (S.D. Tex., Dec. 15, 2003)

G            **Defendant Jansen S. Todd, M.D.'s Original Answer to Plaintiffs' Original Petition**

H            **Plaintiff's Motion to Remand and Plaintiff's Memorandum in Support of Motion to Remand**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE DIET DRUGS (Phentermine/ Fenfluramine/ Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | § § MDL DOCKET NO. 1203 § § § § |

**THIS DOCUMENT RELATES TO:** §

| | |
|---|---|
| CHILDRESS, LINDA v. WYETH, et al. | § § E.D.-Pa. 2:04-CV-21359-HB |
| WILLIAMS, EMMA, L. v. WYETH, et al. | § § E.D.-Pa. 2:04-CV-21360-HB |

**PRETRIAL ORDER NO. _____**

On this day the Court considered the pending motions to remand filed in the captioned case. Having considered the motions, Wyeth's response, and the evidence and authorities submitted by counsel, the Court finds that the motions to remand should be denied. It is, accordingly,

ORDERED that the motions to remand in the captioned cases are hereby DENIED.

So ordered this the _____ day of _____, 2004.

_____
J. Harvey Bartle III

## APPENDIX 1

### Index of Plaintiffs' Echocardiogram Dates

| | | |
|---|---|---|
| **Case:** *Rhonda Allen v. Wyeth*, **MDL Cause No. 2:04-CV-23140-HB (originally filed May 27, 2003)**<br>• Allen, Rhonda | **Echo Date:**<br>• March 28, 2002 | **Delay Before Suit:**<br>• 15 months |
| **Case:** *Mary J. Bryan, et al. v. Wyeth*, **MDL Cause No. 2:04-CV-23142-HB (originally filed May 28, 2003)**<br>• Bryan, Mary J.<br>• Whitworth, Carol J. | **Echo Date:**<br>• February 26, 2001<br>• April 13, 2001 | **Delay Before Suit:**<br>• 27 months<br>• 25 months |
| **Case:** *Kelly L. Phillips, et al. v. Wyeth*, **MDL Cause No. 2:04-CV-23139-HB (originally filed May 29, 2003)**<br>• Harrell, Jennifer<br>• Holmes, Maxine<br>• Miles, Sharon J.<br>• Phillips, Kelly L.<br>• Sanborn, Karen R. | **Echo Date:**<br>• November 21, 2002<br>• November 13, 2002<br>• November 22, 2002<br>• January 30, 2002<br>• August 27, 2002 | **Delay Before Suit:**<br>• 6 months<br>• 6 months<br>• 6 months<br>• 16 months<br>• 9 months |
| **Case:** *Katherine Ramsey v. Wyeth*, **MDL Cause No. 2:04-CV-21591-HB (originally filed June 20, 2003)**<br>• Ramsey, Katherine | **Echo Date:**<br>• July 16, 2002 | **Delay Before Suit:**<br>• 10 months |